By the 22d section of the general railroad law, every company formed thereunder is required, before constructing its road through any county, to file in the clerk's office a map of the route intended to be adopted in such county, and to give written notice of the route so designated to all actual occupants of the land over which it is to pass. *Page 359 
Any person feeling aggrieved by the proposed location may, within fifteen days after receiving such notice, apply for the appointment of commissioners. If appointed it becomes their duty to examine the proposed route, and to affirm or alter it, as may be consistent with the just rights of all parties and the public. There is nothing in the statute which restricts the power of the commissioners over the proposed route to that part of it which lies within the bounds of the land of the party procuring their appointment. The effect of such a restriction would, except in very rare cases, be either to deprive the commissioners of the power to change a location unnecessarily prejudicial to the objecting party, or to compel them, for the purpose of affording such remedy, to make curves which would be a serious injury to the line, and might render it dangerous or impracticable. No change, of any considerable extent, can be made in the line of a railroad at a particular point without involving an alteration of the course to a greater or less distance in each direction; and the legislature has not been guilty of the absurdity of limiting the distance to which such necessary alterations may extend, by the boundaries of the land of the objecting party, or of making his right to relief depend upon the extent of the area of his land. When, upon the application of a person aggrieved by the proposed location, commissioners are appointed, they are required by the statute to examine and affirm or alter, not that part of the line which runs through the premises of the objector, which may be very limited in extent, but the proposed route. That clearly refers to the route referred to in the preceding part of the section, and of which a map is required to be filed, viz., "the route intended to be adopted by such company in said county;" and empowers them to make any alteration of such route which may be necessary to obviate such objections of the party aggrieved as they may decide to be well founded. This point was determined in the Matter of the Long Island Railroad Company
(45 N.Y., 364).
It cannot therefore be objected that, in the present case, *Page 360 
the commissioners have exceeded their jurisdiction by making alterations extending beyond the boundaries of the lands of the petitioners. If duly appointed, they had jurisdiction to affirm or alter the proposed route as might be consistent with the just rights of all parties and the public. Their determination might be, and was, founded upon a personal examination of the route, and of the adjacent property, as well as upon testimony; and if upon knowledge thus acquired they had made an alteration of the proposed route, there would be no means of reviewing their decision upon the merits.
The real question presented on this appeal is whether the adjudication of the commissioners is in fact an alteration of the route. Cutting out and transplanting a portion of the line of the road, and leaving it disconnected at each end from any other portion of the road, would not be such an alteration of the route as is contemplated by the statute. Taken literally, this is what the decision of the commissioners purports to do. It changes the location of the road through the premises of William and George Hartman, from the route laid down on the map, so as to be "laid in and correspond with" a straight line running from the railroad at Zerfass street to the intersection of Jefferson and Ossian streets. It does not, in terms, connect either end of the piece of road so to be laid in and correspond with the straight line described, with the residue of the railroad; nor does it appear whether or not this straight line could be adopted as part of the line of the road. But assuming that the decision can be so interpreted as to embrace in the route of the road, as changed, the whole of this straight line from Zerfass to the intersection of Ossian and Jefferson streets, there the connection ends. The decision does not direct in what manner the road is to be continued beyond Ossian street. It makes the road terminate there. To thus abridge or interrupt the road was clearly beyond the power of the commissioners.
It is argued that the railroad company may themselves lay out and complete the line from the intersection of Jefferson and Ossian streets, so as to connect at some more southerly *Page 361 
point with the residue of the road. But we do not think this an answer to the objection. In exercising the power to alter the proposed route through the county, it was the duty of the commissioners to complete the alteration so as to preserve the continuity of the line, and not merely to point a portion of the road in a particular direction, leaving the company to find their way back to the main line. The commissioners were so to alter the route "as might be consistent with the just rights of all parties and the public;" and for this purpose to examine the route and hear the parties. The whole alteration should be made by the commissioners, and their judgment should be exercised in respect to every part of it. We think that the statute contemplates but one board of commissioners in each county; and that all alterations to be made in the proposed route in such county should be made by that board. There is no provision in the statute looking to the existence of more than one board, or providing for the determination of differences which might arise between several boards. When it should become necessary to alter a line it could hardly be expected that several independent boards would exactly coincide, or harmonize in their action; and if the statute contemplated that several bodies of this description should operate upon the line in the same county, it is reasonable to suppose that provision would have been made for reconciling differences between them. The absence of any such provisions tends strongly to show that the appointment of but one board of commissioners was intended to be authorized. The board so appointed should therefore complete its work, either by affirming the route proposed by the company or making all the necessary alterations; and when this is done, the route through the county is established. Any other construction would lead to endless confusion. In the present case, if the location by the commissioners of the portion of the line described in their decision were held sufficient, and the company should proceed to lay out a new line to connect the piece laid out by the commissioners with the residue of the road, any party deeming himself aggrieved by such new *Page 362 
line might procure the appointment of another board of commissioners, and they might make such alterations as would necessitate a change in the line designated by the first commissioners; and this might happen as often as any board of commissioners should attempt an alteration incomplete in itself, and which the company should be obliged to complete on its own responsibility.
We think, therefore, that the commissioners, if they undertook to make any alteration of the proposed route, should, after having afforded to all occupants of the land to be affected by the alteration an opportunity to be heard, have completed the alteration so as not to break the continuity of the line, or to throw upon the company the responsibility of finishing the work which they, the commissioners, had begun. It was their duty, when causing the line of the road to diverge from the route laid out by the company, to provide a substituted route, consistent with the just rights of all parties and the public, and by which they would be bound. And for the failure of the commissioners thus to complete the performance of the duty imposed upon them by the statute, the judgment of the General Term, reversing their decision, should be affirmed.
All concur, CHURCH, Ch. J., not voting.
Judgment affirmed.